## CRAWLEY *et al. v.* THE STATE.

1. When an extraordinary motion for new trial in a criminal case is made in term, upon grounds which were not known to the movant or his counsel before the convening of the court, and the judge entertains the motion, grants a rule nisi thereon, and the solicitor-general acknowledges service of the motion and nisi, expressly waiving " all other and further service or notice," and is given twenty days' notice of the motion and of the grounds thereof before final hearing, the judgment overruling the motion and denying the new trial will not be affirmed upon the ground that the movant did not give to the opposite party .twenty days' notice of his intention to make the motion.

2. When in a criminal case, after verdict, either in an original motion or an extraordinary motion for new trial, an attack is made upon a juror upon the ground that he was not impartial, the trial judge occupies the place of a trior, and his finding that the juror is competent will not be reversed unless under all the facts the discretion is manifestly abused.

(*a*) The statements of a juror on voir dire may be considered by the trial judge on the hearing of an extraordinary motion for new trial, where the juror died subsequently to the trial and before the making of the making of the motion.

3. A juror in a criminal case who is related either by consanguinity or affinity within the ninth degree to the prosecutrix, ascertained according to the rules of the civil law, is a disqualified juror.

(*a*) That a ·juror is related· to the prosecutrix in a criminal case within the prohibited degree, unknown to the defendant until after verdict, is a good ground for an extraordinary motion for new trial.

(*b*) That the juror was unaware of the relationship to the prosecutrix until after verdict will not prevent a new trial.

### No. 2376. AUGUST 12, 1921.

Indictment for murder. Before Judge J. B. Jones. Union superior court. December 7, 1920.

*John A. Sibley* and *Hughes Spalding,* for plaintiffs in error.

*R. A. Denny, attorney-general, J. G. Collins, solicitor-general, Graham Wright, Pat Haralson, W. E. & T. S. Candler,* and *Howard Thompson,* contra.

GEORGE, J. George Crawley, Decatur Crawley, Rosa Crawley, and Blain Stewart were jointly indicted and jointly tried at the October term, 1919, of Union superior court, for the offense of murder. The defendants were convicted. George Crawley and Decatur Crawley were sentenced to be hanged, and Rosa Crawley and Blain Stewart were sentenced to life imprisonment in the penitentiary. The defendants made a motion for new trial, which was overruled, and the judgment of the lower court was affirmed by the Supreme Court on September 30, 1920. A motion for rehearing was filed, and this motion was denied on October 2, 1920. **150**

*Ga.* 586. Union superior court convened on October 4, 1920, and adjourned on October 9, 1920. On October 9, 1920, and before the adjournment of court, the defendants named above filed an extraordinary motion for new trial, upon the grounds that (1) one of the jurors who had rendered the verdict finding them guilty, to wit, Frank H. Spivia, was disqualified by reason of relationship to the prosecutrix, which fact was unknown to the defendants or their counsel; and (2) one of the jurors who rendered the verdict finding them guilty, to wit, Luther Chastain, was disqualified by reason of prejudice and bias against the defendants, which fact was unknown to the defendants or their counsel. On December 7, 1920, the judge of the superior court entered a judgment overruling the extraordinary motion for new trial, and the movants excepted.

1. The Penal Code (1910), § 1091, provides: "In case of a motion for a new trial made after the adjournment of the court, some good reason must be shown why the motion was not made during the term, which shall be judged of by the court. In all such cases, twenty days' notice shall be given to the opposite party." The State contends that the judgment denying the extraordinary motion for new trial should be affirmed, because, if for no other reason, twenty days' notice of movants' intention to move for a new trial upon extraordinary grounds was not given to the solicitor-general as required by the code. The record discloses that the grounds upon which the extraordinary motion was made were not discovered until after the convening of the superior court on October 4, 1920. As stated above, the motion was filed on the last day of the term of the court, to wit, October 9, 1920. The motion for rehearing made in the case was denied by the Supreme Court only two days before the convening of the October term, 1920, of Union superior court. A motion for new trial based on extraordinary grounds must be filed in term time, either at the term when the case is tried or at some subsequent term. Due diligence required the movants to make their extraordinary motion for new trial promptly on discovery of the grounds. As stated, the grounds of the motion relied on were discovered by movants and their counsel during the October term, 1920, of Union superior court. It was therefore impossible for the movants to give counsel for the State twenty days' notice of their intention to file the extraor-

dinary motion for new trial at the October term. It appears, however, that the trial judge entertained the motion and granted a rule nisi thereon, calling on the solicitor-general to show cause, on November 23, 1920, why the motion should not be granted. Upon the motion and nisi the solicitor-general acknowledged service in the following language: "Service of the within extraordinary motion for new trial, with orders thereon, is hereby acknowledged. Copy waived. All other or further service of notice is hereby waived." On motion of the solicitor-general the hearing was postponed until November 6, 1920, and again postponed until November 9, 1920, on which latter date the court took the motion under advisement, and thereafter on December 7, 1920, entered a judgment overruling the motion. It will be noted that the opposite party had twenty days' notice of the motion before the final hearing thereon, and that he was fully advised of the grounds of the motion. We are of the opinion that this was sufficient. Compare *Brinkley* v. *Buchanan*, 55 *Ga*. 342. We do not rest the decision of this point upon the doctrine of waiver alone, nor upon the fact that the court granted the nisi notwithstanding the failure of movants to give the solicitor-general twenty days' notice of their intention to file the motion for new trial; but we are of the opinion that twenty days' notice of the filing of the extraordinary motion for new trial before final hearing thereon is a sufficient compliance with the requirements of the statute. The decision on this point is made upon all the facts as they appear in the record; and it is unnecessary to decide whether the refusal of the judge to grant a rule nisi solely upon the ground that movants had failed to give the solicitor-general twenty days' notice of their intention to make the extraordinary motion would be erroneous.

2. Considering the grounds of the extraordinary motion in their inverse order, we are of the opinion that the court did not err in overruling the motion upon the second ground thereof. This ground is based upon an affidavit of a witness to the effect that prior to the trial of the case Luther Chastain, one of the jurors, had stated that "the Crawley boys and Blain Stewart ought to be hung, and if he got on the jury he would make it hard for them;" and upon the affidavit of another witness to the effect that this juror, after the trial of the case, had stated that the verdict rendered in the case was in accordance with his previously

fixed opinion. After the trial of the case and before the filing of the extraordinary motion for new trial, the juror died. The State was therefore unable to produce an affidavit by the juror; but the State offered certain affidavits detailing facts and circumstances tending to cast suspicion upon the truth of the statements contained in the affidavits offered by the movants and to disprove this ground of the motion. In addition, the juror had been sworn on the voir dire. Being dead at the time of the filing of the extraordinary motion for new trial, it was competent for the court to take in consideration the juror's sworn statement that he had not formed or expressed an opinion as to the guilt or innocence of the accused, and that there was no bias or prejudice resting on his mind either for or against the accused. See *Buchanan* v. *State,* 24 *Ga.* 282, 286. In view of the counter-showing submitted by the State, the case on this point is within the rule announced in *Jefferson* v. *State,* 137 *Ga.* 382 (73 S. E. 499); *McNaughton* v. *State,* 136 *Ga.* 600 (71 S. E. 1038); *Embry* v. *State,* 138 *Ga.* 464 (75 S. E. 604).

3. On the first ground of the motion it appears that the prosecutrix, the wife of the deceased, is related to the wife of the juror, Spivia. Upon this point the evidence submitted by the movants and the State is not in conflict. The wife of the juror is five degrees removed from the common ancestor, and the prosecutrix is four degrees removed from the common ancestor. By the rule of the civil law the juror's wife and the prosecutrix are related in the ninth degree; by the canon law in the fifth degree. The movants and their counsel were unaware of this relationship until the judgment of the trial court overruling the original motion for new trial was heard and affirmed by the Supreme Court. That the movants and their counsel, by the exercise of due diligence, could not have sooner discovered the relation of the juror to the prosecutrix is not fairly in dispute. The trial court, in overruling the extraordinary motion, expressly found that neither the movants nor their counsel had waived the alleged disqualification of this juror; and waiver necessarily results either from knowledge of such relationship or from ignorance of such relationship, due to the failure to exercise proper diligence. It appears that the prosecutrix and counsel for the State were also unaware of the relationship until after the verdict; and the

affidavit of the juror himself, to the effect that he did not know of the relationship until after the trial, and that even upon notice and inquiry he was unable to ascertain the exact relationship, was offered by the State upon the hearing of the motion. In view of all the facts and circumstances detailed in the affidavits of movants and of their counsel, it must be held that both movants and and their counsel exercised due diligence in the premises. There is no statute in this State expressly declaring what degree of relationship will disqualify a juror in a criminal case. Nor is the rule prescribed by which the degree of relationship is to be determined. In the selection of a juror for the trial of a criminal case the State or the accused may make either of the following objections: " 1. That he is not a citizen, resident in the county. 2. That he is over sixty or under twenty-one years of age. 3. That he is an idiot or lunatic, or intoxicated. 4. That he is so near of kindred to the prosecutor, or the accused, or the deceased, as to disqualify him by law from serving on the jury." Penal Code, (1910), § 999. In *Brown* v. *State,* 28 *Ga.* 439 (original motion for new trial), it appeared that one of the jurors was a cousin of the prosecutor, but the degree of the relationship is not stated. It was held that a new trial should be granted " where one of the jury is cousin to the prosecutor, and the fact not known to the accused or his counsel until after his conviction." In *Ledford* v. *State,* 75 *Ga.* 856 (original motion for new trial), it was held that a third cousin of the prosecutor in a criminal case is not a qualified juror. In the opinion by Chief Justice Jackson (page 857), it is said: " The juror was disqualified, being a third cousin and within the ninth degree, which fact was unknown to the defendant and his counsel until after trial." In *Watkins* v. *State,* 125 *Ga.* 143, 144 (53 S. E. 1024), it is said: " The ninth degree of relationship, as that expression was used in *Ledford's* case, has been construed to mean the ninth degree as calculated by the rules of the civil law, and not of the canon law. Thompson on Trials, 53; 17 Am. & Eng. Enc. L. (2d ed.) 1124. . . Sir Edward Coke stated that relationship in any degree was sufficient to disqualify a juror. Co. Litt. 157a. But later writers state that the relationship must be within the ninth degree, calculated according to the civil law. 3 Bl. Com. 363; 1 Chitty's Crim. L. 541; Finch's Law, 401. Such seems to be the view adopted in this

State, as indicated in *Ledford's* case, supra." In *Roberts* v. *Roberts,* 115 *Ga.* 259, 261 (41 S. E. 616, 90 Am. St. R. 108), it is said: "In *Ledford* v. *State,* supra, Mr. Chief Justice Jackson says, ' The juror was disqualified, being a third cousin and within the ninth degree.' This statement by the Chief Justice, that relationship within the ninth degree would disqualify, we suppose meant within the ninth degree as calculated by the rules of the civil law, and not by the rules of the canon law, which are of force in this State in reference to matters of inheritance." See also *Moody* v. *Griffin,* 56 *Ga.* 304; *McElhannon* v. *State,* 99 *Ga.* 672 (26 S. E. 501). The State insists, however, that upon the point involved, the statements in the 75th *Ga.* and in the other cases cited are obiter dicta. According to 1 Chitty's Criminal Law, 541, a principal challenge will be admitted if the juror is related to either party within the ninth degree, though only by marriage. See 2 Bishop's New Criminal Procedure (2d ed.), § 901. In Thompson on Trials (2d ed.), § 62, it is said that relation by consanguinity and affinity " is reckoned according to the rule of the civil law, as distinguished from that of the canon law, which law was the English law of descent." Relation is a common-law disqualification, and the statement of the Chief Justice in *Ledford's* case, supra, is a recognition of the common-law rule. In *Smith* v. *State,* 2 *Ga. App.* 574 (59 S. E. 311), it was held that a juror who was related by affinity to the prosecutor within the ninth degree as determined by the rule of the civil law is a disqualified juror, and that a new trial should be granted upon this ground, upon extraordinary motion. In the opinion, by Judge Russell, attention is called to the fact that the movant contended that the juror was related to the prosecutor in the seventh degree, but that the counter-showing submitted by the State authorized the trial judge to find that the juror was related to the prosecutor in the ninth degree only. At page 577 it is pointed out that " The degree of relationship to a party which will disqualify a juror is not the same as will disqualify a judge. At common law favor was not presumed in a judge, while originally the presumption as to a juror was that any relationship whatever, either by affinity or consanguinity, would disqualify a juror, this rule being later modified so that the disqualification by reason of kinship extended no further than to include the ninth degree. The limitation of the dis-

qualification of judges to cases where one or more of the parties to the case may be of kin within the fourth degree was the adoption of an arbitrary rule by statute, regardless of the common law, while the rule as to the disqualification of jurors (in the absence of legislation on the subject) is the common law." It has been held by this court that relation within the fourth degree to either party will disqualify a juror in a civil case. *Roberts* v. *Roberts,* supra; *Central Georgia Power Co.* v. *Nolen,* 143 *Ga.* 776 (2), 779 (85 S. E. 945); *Central Georgia Power Co.* v. *Pope,* 144 *Ga.* 130 (86 S. E. 322). The common-law rule, which disqualifies a juror in a case where he is related to one of the parties, is in force in this State, both in civil and criminal cases. Under the statute the judge is disqualified if related to either party within the fourth degree, computed by the canon law (*Short* v. *Mathis,* 101 *Ga.* 287, 28 S. E. 918); under the decisions of this court a juror in a civil case is disqualified if related to either party within the fourth degree, computed by the canon law. Under the common-law rule, applied in this State, a juror in a criminal case is disqualified if related to the prosecutor by consanguinity or affinity within the ninth degree, computed by the rule of the civil law. It is insisted by the State that since the statute (Penal Code, § 999) recognizes the relation of the juror to the prosecutor, the accused, or the deceased, as ground for challenge for cause, objection to the juror upon this point must be taken before trial. Cases in other jurisdictions support this contention. See 3 Wharton's Criminal Procedure (10th ed.), § 1786, and cases cited in note 10. According to these decisions disqualifications not absolute, which are ground for challenge, are not grounds for new trial, unless urged before trial. In *Georgia Railroad* v. *Cole,* 73 *Ga.* 715, it is said: " A jury composed of men who are not lawful men — men whose relationship to the parties renders them incompetent as jurors, cannot render a lawful verdict. If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to waive the same. It cannot be said that the defendants in error have had their case tried; certainly not legally, and although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside." In view of the prior decisions of this court it must be held that a juror related by consanguinity or affinity

within the ninth degree to the prosecutor in a criminal case is a disqualified juror; and where such relation is unknown to the accused until after verdict, a new trial will be granted.

But it is finally insisted that the juror himself was unaware of the relation and could not have been influenced thereby; and that any such disqualification, if good ground for granting an ordinary motion, can not be classed as among the extraordinary grounds recognized by law. In *Ledford* v. *State*, supra, it was said: "It would be too dangerous a precedent to allow the juror to assert that he was ignorant of the relationship till after trial, too. The principle on which the law rejects him is that he is not impartial; the same objection lies to his assertion that he was ignorant of the relationship at the time of the trial, after he had assisted in the conviction." While the reasoning on this point may not be altogether satisfactory, the exact point was ruled and the policy of the State declared. The ruling has been subsequently followed. *Lyens* v. *State*, 133 *Ga.* 587, 600 (66 S. E. 792). The suggestion that the disqualification of a juror in a criminal case on account of relation to the prosecutor can not be classed as among the extraordinary grounds recognized by law is convincingly disposed of by Judge Russell in *Smith* v. *State*, supra, as follows: "Counsel argue that 'the question of the relationship of a juror not only ordinarily occurs in the trial of cases, but is of general and constant occurrence. And the motion in this case shows on its face that it did occur in this case and was inquired for.' We will agree with counsel that the *inquiry* into the subject of the relationship of jurors, — questions as to such relationship, is almost a matter of daily occurrence in the courts. But in the opinion that the discovery of disqualification after counsel has called attention to the subject of relationship, and the trial judge has taken the pains to have an investigation in open court touching relationship, and the cautious juror's mind is again indirectly turned to any cause which might bias his judgment by the questions propounded on the voir dire, is a common or ordinary occurrence, we do not concur. We hold such a circumstance to be extraordinary, and the law has long so regarded it; for, contrary to the prevailing rule, it absolutely shuts its ears to the explanation that the juror was not aware of the relationship and that such relationship did not in any wise affect the verdict. The law will not hear or consider

that the presence of the disqualified juror did not hurt the losing party. This ground of motion for new trial is extraordinary in the same sense as the ground mentioned in *Cox* v. *Hillyer* (65 *Ga.* 572), where one is convicted on the testimony of a witness subsequently found guilty of perjury in giving that testimony. It is lamentably true that perjury is not uncommon, but the law justly considers it an extraordinary circumstance that the falsity of testimony which has been credited by a jury and has induced a solemn verdict of guilty should be established." See also *Harris* v. *State,* 150 *Ga.* 680 (104 S. E. 902). Whether a juror is disqualified on account of bias is a question of fact. Whether a juror is disqualified on account of relationship to the prosecutrix is likewise a question of fact; but the inquiry, in the absence of waiver by the accused, extends only to the existence of the relation and to the degree thereof. If related to the prosecutrix within the prohibited degree, the law declares the disqualification. We are of the opinion, therefore, that the court erred in refusing the new trial upon this ground of the motion.

*Judgment reversed. All the Justices concur.*